IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| Ralph Taylor and Lloyd Baker, individually, and on behalf of all individuals and legal entities similarly situated,<br><br>Plaintiffs<br><br>vs.<br><br>EQT TGHL Exploration, LLC, and Tug Hill Operating, LLC,<br><br>Defendants | ELECTRONICALLY FILED<br>Apr 29 2024<br>U.S. DISTRICT COURT<br>Northern District of WV<br><br>Case No.: **5:24-CV-82 (Bailey)** |

## COMPLAINT

COME NOW Ralph Taylor and Lloyd Baker (jointly "Plaintiffs"), individually, and as representatives of those individuals, entities and companies similarly situated (the "putative Class") and show as follows:

### I.

### PARTIES

1. Ralph Taylor is an adult resident of the state of West Virginia and owns oil and gas interests in West Virginia.

2. Lloyd Baker is an adult resident of the state of West Virginia and owns oil and gas interests in West Virginia.

3. EQT TGHL Exploration, LLC is a Texas limited liability company doing business in West Virginia with its principal place of business in Pennsylvania. It is the successor-in-interest to TH Exploration, LLC ("THEX"), formerly a Texas limited liability company doing business in West

1

Virginia with its principal place of business in Texas.  Its agent for service of process is CT Corporation System, 5098 Washington St. W., Suite 407, Charleston, WV 25313-1561.

4. Tug Hill Operating, LLC is/was at all relevant times a Texas limited liability company doing business in West Virginia with its principal place of business in Texas.  Upon information and belief, its sole member is/was at all relevant times Tug Hill, Inc., a Texas corporation with its principal place of business in Texas.  Its agent for service of process is Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Tx. 78701-3218.

5. EQT TGHL Exploration, LLC, and Tug Hill Operating, LLC are sometimes jointly referred to as "Defendants."

## II.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to:

   a. 28 U.S.C. §1332, as there is complete diversity between the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs; and

   b. The Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d).  Upon information and belief, CAFA's requirements are satisfied in that (1) the members of the Class exceed 100; (2) the citizenship of at least one proposed Class member is different from that of the Defendants; and (3) the matter in controversy, after aggregating the claims of the Members of the putative Class, exceeds $5,000,000.00, exclusive of interest and costs

7. This Court has personal jurisdiction over all defendants, each of which is doing or has done business in the Northern District of West Virginia.

8. Venue of this matter is proper in the Northern District of West Virginia.

## III.

2

### PLAINTIFFS' OIL & GAS LEASES

9. On December 30, 2014, Ralph Taylor entered into an oil and gas lease with THEX as lessee, covering 2.23 acres located in Marshall County, West Virginia, a Memorandum of which is recorded at Book 865 page 386 in the Marshall County records (the "Taylor Lease"). On July 17, 2020, THEX recorded a Notice of Extended Primary Term extending the term of the Lease which is recorded at Book 1089 page 256 in the Marshall County records.

10. On November 6, 2014, Lloyd Baker entered into an oil and gas lease with THEX as lessee, covering 486.1625 acres located in Marshall County, West Virginia, a Memorandum of which is recorded at Book 865 page 389 in the Marshall County records (the "Baker Lease").

11. Through an agreement or agreements between THEX and Tug Hill Operating, LLC, Tug Hill Operating handled all administrative and operational duties associated with Plaintiffs' Leases, and the putative Class' Leases, up to and through November 30, 2023, including calculating and paying royalties to lessors, at which time EQT THEX, or one of its affiliates, assumed those responsibilities. Tug Hill Operating is/was an affiliate of THEX. THEX and Tug Hill Operating are jointly referred to herein as "Tug Hill."

12. Plaintiffs' Leases provide for royalties on oil, gas and their constituents produced under those Leases as a percentage of the "gross proceeds" for the sale of the oil, gas and their constituents. "Gross proceeds" is defined in relevant part as the "total consideration paid for oil, gas, liquids, associated hydrocarbons, and marketable by-products produced and sold from the leased premises to an un-affiliated third party in an arms-length transaction without the deduction of any costs whatsoever, by the Lessee."

### IV.

### ROYALTY STATEMENTS

13. From inception of the Lease through November 30, 2023, Plaintiffs received royalty statements and royalty checks from Tug Hill Operating.

14. Plaintiffs' Leases provide that "Each royalty payment shall contain a statement showing the name of the purchaser, the volume of production purchased, and said price paid." The Tug Hill Operating royalty statements do not comply with this requirement.

15. Further, the royalty statements sent to Plaintiffs obscure the true volume of oil, gas and related products produced from Plaintiffs' property, the true price paid for the products and the costs covertly deducted in the royalty calculations.

16. These royalty statements were submitted by Tug Hill to Plaintiffs as the sole explanation of the volume and value of all oil, gas and associated products produced and sold from Plaintiffs' Leases and whether costs were assessed against Plaintiffs and deducted from Plaintiffs' royalty payments. As a matter of West Virginia law, the royalty statements prepared by Tug Hill were and are required to permit a royalty owner to easily discern whether costs were actually incurred and whether the costs were fair and reasonable. *See generally*, syllabus pt. 5, *Wellman v. Energy Resources, Inc.*, 210 W.Va. 200 (2001) 557 S.E.2d 254, 152 Oil & Gas Rep. 178 (2001). Additionally, deductions from royalty payments must be linked to specific language in the lease allowing costs to be allocated between the lessor and lessee.

17. Tug Hill intended that Plaintiffs would rely on, and Plaintiffs did rely on, the information provided in the royalty statements as showing the volume of the production from Plaintiffs' Leases, how Plaintiffs' royalties were calculated and the correctness of the calculation under the terms of the Lease. However, upon information and belief, material information in the statements is incorrect or misleading, such that the statements as a whole are incorrect or misleading.

V.

**IMPROPER DEDUCTION OF COSTS**

18. Up to and through November 30, 2023, the oil and production from Plaintiffs' Leases was sold and marketed by Tug Hill. Upon information and belief, Tug Hill entered into an agreement(s) with other entities, supposedly third-party purchasers, to allegedly "buy" the production from wells drilled pursuant to or in connection with Plaintiffs' Leases. The alleged third-party purchasers then entered into or were required by Tug Hill to enter into a separate agreement or agreements with another entity or entities to gather, transport and process the oil and gas production from Plaintiffs' Leases. Various fees were charged under these gathering, transportation and processing agreement(s). The alleged third-party purchasers would then pay Tug Hill the amount received for the sale of the production from Plaintiffs' Leases less these gathering, transporting, processing and other fees and less an additional marketing fee.

19. Tug Hill would calculate royalties based upon the net amount it received, which would thereby include, directly or indirectly, and pass on to Plaintiffs, and the other royalty owners, the various costs for gathering, transporting and processing in violation of the terms of Plaintiffs' Leases.

20. Upon information and belief, the foregoing agreements are not true third-party arms-length purchase and sale agreements with true third-party purchasers.

**VI.**

**FRAUDULENT CONCEALMENT**

21. By the misleading royalty statements sent to Plaintiffs, Tug Hill and EQT TGHL fraudulently concealed from Plaintiffs that their royalties were being reduced by costs not allowed under their Leases. Plaintiffs reasonably relied on the royalty statements as reflecting the proper calculation of royalties due under the Lease.

22. Accordingly, the running of any limitations period against Plaintiffs and the putative Class should be tolled as a result.

## VII.

## Class Action Allegations

23. Plaintiffs bring this action on behalf of themselves and all others similarly situated. Plaintiffs are members of, and seek to represent, a class of persons and legal entities defined as:

> All lessors entitled to receive royalty payments for the period up to and including November 30, 2023, pursuant to Oil & Gas Leases to which TH Exploration, LLC, or its affiliates or successors, is or was the lessee covering property located in West Virginia with royalty or other Lease clauses providing in substance that royalties on oil, gas and their constituents are to be calculated without deductions for post-production or other costs or expenses.
>
> Excluded from the Class are:
>
> a. The officers and directors of any Defendant and their immediate family;
> b. Any judge or judicial personnel assigned to this case and their immediate family; and
> c. Any legal representative, successor or assignee of any excluded person or entity.

### Numerosity of the Class

24. The members of the putative Class are so numerous that joinder of all members is impracticable. The records of Marshall County, West Virginia alone reflect that since 2014, THEX acquired hundreds of oil and gas leases covering property located in West Virginia. Upon information and belief, all or a majority of those leases, covering thousands of acres contain royalty provisions providing in substance that royalties on oil, gas and their constituents are to be calculated without deductions for post-production or other costs or expenses. Those lessors received the same misleading royalty statements as did Plaintiffs and were and are subjected to the same deductions and loss of full royalty payments. The Class Members may be identified using

6

methods of assessment and/or records maintained in the ordinary course of business by Tug Hill and, now, EQT THGL. Notice may be provided to the Class Members by publication, first-class mail and/or other means.

### Commonality

25. Common questions of law and fact exist as to all Class Members and predominate over questions affecting individual Class Members. Among the questions of law and fact common to the putative Class are:

   a. Whether the royalty statements sent by Defendants were misleading;

   b. Whether Defendants sold the production from the Leases at issue to true arms-length third party purchasers for a true market value; and

   c. Whether Defendants took improper deductions before calculating the royalty due for oil and gas produced under the Leases at issue.

Defendants are expected to raise common defenses to these claims.

### Typicality

26. The claims of Plaintiffs are typical of the claims of the Class. Furthermore, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread of misconduct resulting in injury to all members of the Class. Plaintiffs have been damaged by the same wrongful conduct of Defendants and suffered injuries similar in kind and degree to the injuries suffered by all putative Class Members. Plaintiffs make the same claims and seek the same relief for themselves and all Class Members.

### Adequacy of Representation

27. Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex class actions. Neither Plaintiffs nor their Counsel have interests adverse to those of the Class.

<u>Superiority of Class Action</u>

28. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Without a class action, individual Class Members would face burdensome litigation expenses, deterring them from bringing suit or adequately protecting their rights. Because of the ratio of the economic value of the individual Class Members' claims in comparison to the high litigation costs in complex cases such as this, few could or would likely seek their rightful legal recourse.

29. Moreover, prosecuting separate actions by individual Class Members would create a risk of (A) inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Defendants and/or (B) adjudications with respect to individual Class Members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

30. Plaintiffs know of no difficulty that will arise in the management of this litigation that would preclude its maintenance as a class action.

31. Defendants have acted, or refused to act, on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

## VIII.

## CAUSES OF ACTION

### Count I

### Breach of Contract

32. Plaintiffs incorporate the preceding paragraphs of this Complaint as though fully stated here.

33. Defendants deducted costs and expenses not allowed under Plaintiffs', and the putative Class', Leases before calculating Plaintiffs' royalties, and the royalties of the putative Class.

34. Defendants materially breached the Lease obligations to Plaintiffs, and the putative Class, including, but not limited to, in the following particulars:

   a. Failing to disclose and/or providing inaccurate and misleading information about the gathering, transporting, processing and the sale of oil, gas and associated products produced under Plaintiffs' Leases and the leases of the putative Class members;

   b. Improperly deducting costs on oil, gas and constituent products produced under Plaintiffs' Leases and the leases of the putative Class members in calculating royalties due under those leases; and

   c. Other breaches as will be shown at the trial of this matter.

35. Plaintiffs, and the putative Class, have sustained pecuniary losses due to these breaches.

36. Plaintiffs, and the putative Class, have complied with every element and precondition, if any, of their respective Leases.

37. Pursuant to the terms of their Leases, Plaintiffs, and the putative Class, are entitled to recover not only the unpaid royalty amounts, but also interest on the unpaid amounts from the date

due at a rate of 12% per annum or the maximum allowed by West Virginia, whichever is greater, attorney's fees and all related costs and expenses.

38. Defendants' breaches of contractual obligations, singularly and/or in any combination, have caused significant financial damages to Plaintiffs, and the putative Class, and/or conferred unjust and unearned benefits on Defendants. Plaintiffs, on behalf of themselves and the putative Class, seek all damages to which they, and the putative Class members, are entitled, including consequential and incidental damages, lost profits, out-of-pocket losses, compensatory and punitive damages.

**WHEREFORE**, Plaintiffs, and the putative Class, demand judgment in an amount to be determined along with all other appropriate damages in law or equity, including pre-judgment interest, post-judgment interest, compensatory damages, punitive damages and attorneys' fees.

## Count II

### Accounting

39. Plaintiffs incorporate the preceding paragraphs of this Complaint as though fully stated here.

40. Plaintiffs, and the putative Class, are entitled to an accounting from Defendants of:

   a. All volumes of oil, gas and associated products produced from Plaintiffs' and the putative Class leases;
   b. The manner and contractual arrangements by which such production was marketed and sold;
   c. The manner in which royalties were calculated;
   d. All costs charged to the royalty owners, directly and indirectly;
   e. The volumes of all production upon which royalties were paid;
   f. All other matters to which Plaintiffs, and the putative Class, are entitled to an accounting under their leases and West Virginia law.

**WHEREFORE**, Plaintiffs, and the putative Class, demand an accounting as specified herein.

10

## Count III

## Declaratory Judgment and Injunctive Relief

41. Plaintiffs incorporate the preceding paragraphs of this Complaint as though fully stated here.

42. This controversy is ripe for adjudication.

43. Plaintiffs, on behalf of themselves and the putative Class, seek a declaratory judgment that under the Leases:

   a. Deductions of costs or expenses before calculating royalties due on oil, gas and other products produced are not permitted under the leases at issue, either directly or indirectly;

   b. Defendants' indirect deductions of costs or expenses before calculating royalties due on oil and gas constitute breaches of the leases at issue; and

   c. All other declaratory relief to which Plaintiffs, and the putative Class, are entitled.

44. Plaintiffs, on behalf of themselves and the putative Class, also seek the following injunctive relief:

   a. Enjoining Defendants from deducting any costs before calculating royalties due on oil, gas and other products produced from the leases at issue that have yet to be paid; and

   b. All other necessary injunctive relief to which Plaintiffs, and the putative Class, are entitled.

## IX.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, and the putative Class, demand judgment in their favor for:

1. An Order certifying the class proposed by Plaintiffs, naming Plaintiffs as class representatives, and appointing Plaintiffs' counsel as class counsel;

2. Past due royalties owed under the terms of Plaintiffs' Leases and the leases of the putative Class;

3. Damages for breach of Plaintiffs' Leases and the leases of the putative Class;

4. An accounting as prayed for herein;

5. Declaratory relief as prayed for herein;

6. Injunctive relief as prayed for herein;

7. Punitive Damages as allowed by law;

8. Pre-judgment and post-judgment interest as allowed by the Leases and/or law;

9. Attorney's fees and all other related costs and expenses as allowed under the Leases and/or law; and

10. Any and all other relief this Court deems appropriate and to which Plaintiffs, and the putative Class, are entitled.

                                                                PLAINTIFFS
                                                                By Counsel

/s/Mark A. Kepple
Mark A. Kepple, Esq.
W.Va. Bar ID #7470
1219 Chapline Street
Wheeling, WV 26003
Phone (304)233-3100
Fax (304) 233-0201
mkepple@baileywyant.com

Joseph Scipione, Esq.
The Nittany Group
2437 Commercial Blvd., Suite 240
State College, PA 16801

Robert L. Redfearn, Jr. Esq.
Simon, Peragine, Smith & Redfearn
1100 Poydras St. #3000
New Orleans, LA 70163

Thomas E. White, Esq.
White Law Office
604 6th St,
Moundsville, WV 26041